## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

DARIN MCGILL, et al.

    Plaintiffs,

    v.

KOROS, LLC, et al.,

    Defendants.

CIVIL NO. JKB-20-03191

\*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*

### MEMORANDUM

In this case, Plaintiffs Darin McGill, Sally McGill, Nicholas McGill, Thomas Marks, Sylvia Bimbo, F.M., H.M., Bobby Petro, Fernanda Wandemberg, Priscilla Petro, N.M., and Michael Demetro bring claims against Defendants Koros, LLC d/b/a Double T Diner, Koros, Inc., Tie Mortos, Inc., and TJL, Inc. for allegedly discriminatory conduct in violation of federal and state law. Now pending before the Court is Defendants' Motion to Dismiss (ECF No. 16) and Plaintiffs' Motion for Leave to File Surreply (ECF No. 28). Both motions are fully briefed, and no hearing is required. *See* Local Rule 105.6 (D. Md. 2021). For the reasons set forth below, Defendants' Motion will be GRANTED IN PART and DENIED IN PART and Plaintiffs' Motion will be DENIED.

### I.     *Background[1]*

Plaintiffs are Gypsies and congregants of the God is Able Ministries church, a member of the God's Gypsy Christian Church Assembly. (Am. Compl. ¶¶ 21–22, ECF No. 10.) Plaintiffs have dined at the Double T Diner in Pasadena, Maryland ("Diner") "for years, without issue" and,

---

[1]    Except where noted, the facts in this section are taken from the Amended Complaint. The facts are construed in the light most favorable to Plaintiff. *See Ibarra v. United States*, 120 F.3d 472, 474 (4th Cir. 1997).

during that time have "discussed their heritage and congregation with the staff through general conversation." (*Id.* ¶¶ 24, 34.)

On November 5, 2017, Darin McGill, Sally McGill, Nicholas McGill, Thomas Marks, Sylvia Bimbo, F.M., H.M., Bobby Petro, Fernanda Wandemberg, Priscilla Petro, and N.M. (collectively, the "November 5 Plaintiffs") entered the Diner and requested to be seated. (*Id.* ¶¶ 23, 25.) The November 5 Plaintiffs allege that the Diner manager informed them that "they were not allowed to be seated at the restaurant, served and enjoy the Defendants' dining services." (*Id.* ¶ 27.) They further allege that the manager stated that "they were being denied service because a member or members of Plaintiffs' congregation—a congregation based on the Gypsy race and religion—had disrespected the Diner which caused the ban of all congregation members to be placed into effect," although none of the Plaintiffs were "a part of the group that caused the ban, as confirmed by the manager." (*Id.* ¶¶ 28–29.) The November 5 Plaintiffs then left the Diner. (*Id.* ¶ 32.)

On January 28, 2018, Plaintiff Michael Demetro and his family entered the Diner. (*Id.* ¶ 33.) Demetro alleges that the manager explained that he and his family were "not allowed to be seated at the restaurant, served, and enjoy the Defendants' dining services" and that "they were being denied service because they are Gypsies and they attend the God is Able Ministries church." (*Id.* ¶¶ 36, 38.) Demetro and his family then left the Diner. (*Id.* ¶ 40.) Demetro informed the November 5 Plaintiffs of the "continued ban." (*Id.* ¶ 41.) Plaintiffs allege that only members of their congregation were subject to this ban and that there was "no distinction between Plaintiffs who were denied service and the other patrons who were permitted to enter the restaurant, other than Plaintiff[s'] race and/or religion." (*Id.* ¶ 44.)

In May 2018, Plaintiffs "each filed" charges with the Maryland Commission on Civil Rights ("MCCR") against "Koros, LLC d/b/a/ Double T Diner" detailing the alleged discrimination ("MCCR Charges").[2]  (*Id.* ¶ 50.)  On or around May 27, 2018, Defendant TJL, Inc. filed a letter with the MCCR responding to the charges ("May 27 Letter").  (*Id.* ¶ 52.)  In the May 27 Letter, TJL, Inc. explained that it was the owner of the Diner and that Plaintiffs had been banned because they were a part of "a 30-person group who were unruly and disturbed other patrons." (*Id.* ¶¶ 52–53.)  Plaintiffs allege that they did not receive the May 27 Letter and that, instead, Plaintiffs' counsel received an email from the MCCR summarizing it.  (*Id.* ¶ 55.)  On or about May 3, 2019, Plaintiffs' counsel also received an email from the MCCR explaining that the Diner had offered the Plaintiffs a $200 gift card to use at the Diner.  (*Id.* ¶ 57.)  On or about August 19, 2019, the MCCR issued its findings ("MCCR Findings").[3]  (*Id.* ¶ 58.)

On November 4, 2020, Plaintiffs filed a Complaint against Koros, LLC d/b/a Double T Diner, Koros, Inc., and Tie Mortos, Inc. (Compl., ECF No. 1.), which was subsequently amended on January 12, 2021 to add TJL, Inc. as a defendant and to make certain substantive changes. (*See* Am. Compl.).  The four-count Amended Complaint brings claims for: violation of 42 U.S.C. § 1981 (Count I); violation of Title II of the Civil Rights Act of 1964, 42 U.S.C. § 2000a et seq. ("Title II") (Count II); negligent hiring and retention (Count III); and respondeat superior (Count IV).  (Am. Compl. ¶¶ 59–107.)  Plaintiffs seek compensatory and punitive damages, declaratory and injunctive relief, and attorneys' fees.  (*Id.*)

---

[2]      Although Plaintiffs indicate that they "each filed" a charge with the MCCR, it appears that Plaintiffs Priscilla Petro and minors F.M., H.M., and N.M. did not individually file charges with the MCCR. (*See* Mot. Dismiss Exs. 2–9, ECF Nos. 17-3–10; Opp'n to Mot. Dismiss Exs. 1–7, 9, ECF Nos. 22-1–7, 22-9.) The MCCR Charges were filed on May 3, 2018.  (*Id.*)

[3]      Plaintiffs do not describe these findings in the Amended Complaint, but rather note that the findings are "not binding" on this Court. (Am. Compl. ¶¶ 58.)  The MCCR concluded that "there is No Probable Cause to believe that" Plaintiffs were denied service due to their religion or national origin. (Mot. Dismiss Mem. Supp. Ex. 10, ECF No. 17-11.)

## II.    *Legal Standard*[4]

Federal Rule of Civil Procedure 12(b)(1) governs motions to dismiss for lack of subject

matter jurisdiction. "If the court determines at any time that it lacks subject-matter jurisdiction,

the court must dismiss the action." Fed. R. Civ. P. 12(h)(3). The Court may properly grant a

motion to dismiss for lack of subject matter jurisdiction "where a claim fails to allege facts upon

which the court may base jurisdiction." *Davis v. Thompson*, 367 F. Supp. 2d 792, 799 (D. Md.

2005).

When considering a motion to dismiss pursuant to Rule 12(b)(6), the Court must "accept

as true all well-pleaded allegations and view the complaint in the light most favorable to the

plaintiff." *Venkatraman v. REI Sys., Inc.*, 417 F.3d 418, 420 (4th Cir. 2005). To survive a motion

to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim

to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell

Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the

---

[4]     Plaintiffs argue that Defendants have introduced documents outside of the pleadings, thereby
converting the Motion to Dismiss into one for summary judgment. (Opp'n to Mot. Dismiss at 7–8.)
However, the Court will not convert the Motion. A district judge has "complete discretion" in deciding
whether to accept material beyond the pleadings, "thereby converting the motion, or to reject it or simply
not consider it." 5C Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1366, at
159 (3d ed. 2004). Further, a court may consider certain materials without converting a motion to dismiss.
*See E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc.*, 637 F.3d 435, 448 (4th Cir. 2011) (explaining
that a court may consider "documents attached or incorporated into the complaint").
      Here, the parties have provided exhibits relating to the MCCR's investigation, including the MCCR
Charges and MCCR Findings, which the Court will consider. However, in considering these documents,
the Court is mindful of the purpose for which Plaintiffs provided or referenced them. The Court has
therefore reviewed these documents for the purpose of determining whether Plaintiffs have satisfied the
notice provision of Title II, discussed *infra. See Goines v. Valley Cmty. Servs. Bd.*, 822 F.3d 159, 167 (4th
Cir. 2016) (explaining that "where the plaintiff attaches or incorporates a document for purposes other than
the truthfulness of the document, it is inappropriate to treat the contents of that document as true. For
example, if a prisoner attaches an unfavorable decision from a prison tribunal to show that he has exhausted
his administrative remedies, he does not thereby adopt the factual findings of that unfavorable decision").
      At this time, the Court will not consider other materials appended to the briefing, including a video
purporting to show the November 5, 2017 incident (Opp'n to Mot. Dismiss Ex. 8, ECF No. 22-8) and
Declarations by several of the Plaintiffs (Opp'n to Mot. Dismiss Exs. 10–18, ECF Nos. 22-10–18).

plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 446 U.S. at 662. A "pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.' Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Iqbal*, 556 U.S. at 678 (alteration in original) (quoting *Twombly*, 550 U.S. at 555, 557).

### III.    *Analysis*

Defendants make several threshold arguments in support of their Motion to Dismiss: that this Court lacks subject matter jurisdiction as to Plaintiffs' Title II claims; that Koros, Inc., Koros, LLC, and Tie Mortos, Inc. are not the correct defendants; and that the November 5 Plaintiffs' claims against TJL, Inc. are untimely. Defendants also attack the merits of Plaintiffs' claims, arguing that Plaintiffs fail to state a claim with respect to their Title II and § 1981 claims. Finally, Defendants argue that, because the Court should dismiss all federal law claims, the Court should decline to exercise jurisdiction over the state law claims.

This Court finds that the November 5 Plaintiffs' claims against TJL, Inc. are untimely and thus will be dismissed. However, Plaintiffs' remaining claims will not be dismissed.

#### A. *Threshold Arguments*

As to Defendants' threshold arguments, the Court concludes that it has subject matter jurisdiction with respect to Plaintiffs' Title II claims and that it is premature to dismiss claims as

to Koros, Inc., Koros, LLC, or Tie Mortos, Inc. at this stage. However, the November 5 Plaintiffs' claims against TJL, Inc. are untimely and will be dismissed.

### 1.   *Subject Matter Jurisdiction*

The Court's subject matter jurisdiction in this case is facially straightforward. Plaintiffs' federal claims (Counts I and II) are based on § 1981 and Title II; the Court therefore has federal question jurisdiction over those claims. *See* 28 U.S.C. § 1331. Title II also independently grants the Court jurisdiction. *See* 42 U.S.C. § 2000a-6. Jurisdiction over the state law claims (Counts III and IV) is predicated on the Court's supplemental jurisdiction. *See* 28 U.S.C. § 1367. Defendants do not dispute any of these jurisdictional predicates.

Defendants, however, argue that Plaintiffs' Title II claims should be dismissed for lack of subject matter jurisdiction because Plaintiffs did not provide adequate notice of their claims against Defendants to the MCCR. (Mot. Dismiss Mem. Supp. at 16–18.) Title II contains a notice requirement, which provides that "no civil action may be brought . . . before the expiration of thirty days after written notice of such alleged act or practice has been given to the appropriate State or local authority." 42 U.S.C. § 2000a-3(c). However, this notice requirement constitutes a mandatory claim-processing rule, rather than a jurisdictional bar to Plaintiffs' Title II claims.

Interpreting similar statutory text and structure, the United States Supreme Court has held that exhaustion for purposes of Title VII is more properly considered a "mandatory claim-processing rule," rather than a jurisdictional requirement. *Fort Bend Cnty. v. Davis*, 139 S. Ct. 1843, 1851–52 (2019) (*abrogating Jones v. Calvert Grp., Ltd.*, 551 F.3d 297 (4th Cir. 2009)). In concluding that exhaustion in a Title VII case is not a jurisdictional requirement, the Supreme Court explained that "[f]ederal courts exercise jurisdiction over Title VII actions pursuant to 28 U.S.C. § 1331's grant of general federal-question jurisdiction" and that "Title VII's own

6

jurisdictional provision" gives federal courts jurisdiction over Title VII cases. *Id.* at 1850. The Court further explained that "[s]eparate provisions of Title VII . . . contain the Act's charge-filing requirement" and that those "provisions do not speak to a court's authority . . . or refer in any way to the jurisdiction of the district courts." *Id.* (citations and quotations omitted).

Title II's notice requirement is likewise non-jurisdictional. Like Title VII, federal courts exercise jurisdiction over Title II claims pursuant to 28 U.S.C. § 1331's grant of general federal-question jurisdiction and Title II's own jurisdictional provision, 42 U.S.C. § 2000a-6 (giving federal courts "jurisdiction of proceedings instituted pursuant to this subchapter . . . without regard to whether the aggrieved party shall have exhausted any administrative or other remedies that may be provided by law"). A separate provision, § 2000a-3(c), contains the notice requirement, and this provision—like the charge-filing provision applicable to Title VII claims—does not refer to the Court's authority or refer in any way to the jurisdiction of the district courts. *See Brown v. Whole Mkt. Grp., Inc.*, 789 F.3d 146, 153 (D.C. Cir. 2015) ("[W]e take this opportunity to make clear that section 2000a-3(c) of [Title II] does not constitute a jurisdictional prerequisite"); *Domino v. Ky. Fried Chicken*, Civ. No. HSG-19-8449, 2020 WL 5847306, at *3 (N.D. Cal. Oct. 1, 2020) ("The Court does not construe [the notice requirement of § 2000a-3(c)] as a jurisdictional prerequisite, but rather a mandatory claim-processing rule.").

Although the notice requirement is not jurisdictional, it is mandatory. Therefore, the Court will consider whether Plaintiffs provided sufficient notice for purposes of § 2000a-3 under Rule

12(b)(6) for failure to state a claim, rather than 12(b)(1) for lack of subject matter jurisdiction, as discussed in more detail below.

### 2. *Incorrect Defendants*

Defendants also argue that Plaintiffs' claims against Koros, LLC, Koros, Inc., and Tie Mortos, Inc. should be dismissed because only TJL, Inc. owns and operates the Diner. (Mot. Dismiss Mem. Supp. at 16.) Plaintiffs counter that the ownership of the restaurant is not clear and that they require discovery to determine the ownership structure of the restaurant. (Opp'n to Mot. Dismiss at 30–33.)

Given the conflicting information provided in the briefing relating to the ownership and operating structure of the Diner, determination as to the appropriate defendant(s) at this stage would be premature. *See, e.g., McCullough v. Auto. Ins. Co. of Hartford, Conn.*, Civ. No. MJG-18-0998, 2018 WL 3049480, at *3 (D. Md. June 20, 2018) ("The Court finds it premature to make a finding about the ownership status of the Property at the motion to dismiss stage, especially when parties present conflicting versions of the facts and the Court is not at this time considering any materials or exhibits presented that are not included in the Complaint."); *Lee v. N.C. Dep't of Pub. Safety*, Civ. No. CT-13-3228, 2014 WL 2873325, at *2 (E.D.N.C. June 24, 2014) ("Essentially, defendants assert that [plaintiff] has named the wrong defendants. At [the motion to dismiss] stage, however, this argument is grounds for possible discovery to determine the proper defendant and amendment of the complaint if necessary rather than dismissal."); *Wilmington Trust, Nat. Ass'n, et al. v. Nat. Gen. Ins. Co.*, Civ. No. TDS-21-0207, 2021 WL 2531063, at *4 (M.D.N.C. June 21, 2021) (denying a motion to dismiss where defendant's "sole argument on Rule 12(b)(6) grounds is that Plaintiffs named the wrong party" and where "[p]laintiffs have otherwise stated a plausible

claim for relief as to each count"). The Court therefore will not dismiss claims against Koros, LLC, Koros, Inc., and Tie Mortos, Inc.

### 3.   *Timeliness of November 5 Plaintiffs' Claims Against TJL, Inc.*

The November 5 Plaintiffs' claims against TJL, Inc. are untimely. Plaintiffs named TJL, Inc. in their Amended Complaint, which they filed on January 12, 2021. As Plaintiffs and Defendants agree, the statute of limitations applicable to Plaintiffs' federal law claims is Maryland's three-year statute of limitations. *See Kohler v. Shenasky*, 914 F. Supp. 1206, 1210 (D. Md. 1995) (explaining that Maryland's three-year statute of limitations "was the appropriate statute to look to for federal civil rights actions"); *Evans v. Chesapeake & Potomac Tel. Co. of Md.*, 535 F. Supp. 499, 500 (D. Md. 1982) (holding that "the most appropriate state law period of limitations applicable to a claim under section 1981 is the three-year period of Md. Cts. & Jud. Proc. Code Ann. [§] 5-101"). The state law claims are also subject to a three-year statute of limitations. *See* Md. Code Ann., Cts. & Jud. Proc. § 5-101 ("A civil action at law shall be filed within three years from the date it accrues unless another provision of the Code provides a different period of time within which an action shall be commenced.") Accordingly, a direct application of the statute of limitations would render the November 5 Plaintiffs' claims untimely against TJL, Inc. by approximately two months.

However, Plaintiffs argue that this filing was timely because: (1) the statute of limitations did not accrue until at least May 3, 2019 (when they were provided with a gift card to return to the Diner); (2) Plaintiffs suffered continued harm with respect to their Title II claims; and (3) the § 1981 claims and state claims were tolled pursuant to the Court of Appeals of Maryland's Sixth Revised Administrative Order on the Emergency or Tolling or Suspension of Statutes of Limitations and Statutory Rules Deadlines Related to the Initiation of Matters and Certain

9

Statutory Rules Deadlines in Pending Matters ("Maryland Court of Appeals Order"). (Am. Compl.
¶¶ 18–20.) None of these arguments make the claims by the November 5 Plaintiffs timely as to
TJL, Inc.

### i.   *Accrual and Continuing Violation*

The statute of limitations for the November 5 Plaintiffs' claims against TJL, Inc. accrued
on November 5, 2017 and not on January 28, 2018 (when Demetro was allegedly banned) or May
3, 2019 (when Plaintiffs were allegedly provided with a gift card). With respect to the federal
claims, although the state statute of limitations applies, "[t]he time of accrual of a civil rights action
is a question of federal law." *Cox v. Stanton*, 529 F.2d 47, 50 (4th Cir. 1975). "[T]he time of
accrual is when plaintiff knows or has reason to know of the injury which is the basis of the action."
*Id.* Here, the November 5 Plaintiffs knew or should have known of their injury on November 5,
2017, when the manager at the Diner allegedly told them that they were being denied service
because there was a ban on all members of Plaintiffs' congregation. For the same reasons, the
statute of limitations also accrued with respect to Plaintiffs' state law claims on November 5, 2017.
*See  Poffenberger v. Risser*, 431 A.2d 677, 680 (Md. 1981) (holding the "discovery rule to be
applicable generally in all actions and the cause of action accrues when the claimant in fact knew
or reasonably should have known of the wrong").

Plaintiffs also argue that Defendants' ban constituted a continuing violation because the
ban was "continued and was reinforced by" Defendants' ban on Demetro and his family on January
28, 2018.[5] (Opp'n to Mot. Dismiss at 20–22.) This argument fails because the continuing violation
theory is inapposite in cases, such as this one, where a plaintiff "has alleged discrete violations."

---

[5]      Plaintiffs argue that Maryland continuing unlawful acts doctrine should apply, while Defendants
argue that the federal continuing violation doctrine should apply. In this case, the Maryland and federal
doctrines are not in tension and an application of the Maryland continuing unlawful acts doctrine would not
change the outcome.

*Holland v. Wash. Homes, Inc.*, 487 F.3d 208, 220 (4th Cir. 2007). Plaintiffs cannot extend their time to file suit "merely because the plaintiff asserts that such discrete acts occurred as part of a policy of discrimination." *Id.* (quotations omitted) (citing *Williams v. Giant Food, Inc.*, 370 F.3d 423, 429 (4th Cir.2004)). Here, the November 5 Plaintiffs have complained that they were discriminated against on November 5, 2017. Crucially, the November 5 Plaintiffs do not allege that they returned to the Diner after November 5, 2017 or that they were discriminated against at any other time. They cannot use the allegedly discriminatory ban on Demetro to extend the statute of limitations as to their claims. *See Md. State Conf. of NAACP Branches v. Md. Dep't of State Police*, 72 F. Supp. 2d 560, 569 (D. Md. 1999) (declining to apply the continuing violation theory where "[e]ach of the plaintiffs was involved in discrete incidents on different dates involving different factual circumstances" and that, as to certain plaintiffs, there was no "'present' violation alleged within the limitations period"). Further, the November 5 Plaintiffs' allegations that they suffered mental anguish as a result of the alleged ban does not save their claims. *See Nat'l Advert. Co. v. City of Raleigh*, 947 F.2d 1158, 1166 (4th Cir.1991) (citations and quotations omitted) ("A continuing violation is occasioned by continual unlawful acts, not continual ill effects from an original violation."). In sum, the November 5 Plaintiffs' claims as to TJL, Inc. "are not actionable if time barred even when they are related to acts alleged in timely filed charges." *Holland*, 487 F.3d at 220 (quoting *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 113 (2002)).[6]

### ii. *Maryland Court of Appeals Administrative Order*

Alternatively, Plaintiffs argue that a Maryland Court of Appeals Order—which tolled "matters required to be filed in a Maryland state trial or appellate court" due to the COVID-19

---

[6]     In their Amended Complaint, Plaintiffs only allege that the continuing violation doctrine applies to their Title II claims. However, the Court notes that the November 5 Plaintiffs' § 1981 and state law claims against TJL, Inc. are time-barred for similar reasons. Again, although Plaintiffs allege that Defendants had a discriminatory policy and that Demetro was discriminated against, the November 5 Plaintiffs have not

pandemic—applies to Plaintiffs' claims. *See* Maryland Court of Appeals Order. The Plaintiffs so argue despite this Court's standing orders, which clearly state that statutes of limitations were not tolled due to the COVID-19 pandemic. *See, e.g.,* Standing Order 2020-05. None of Plaintiffs' claims were required to be brought in a Maryland state court. Plaintiffs' federal law claims (Counts I and II) were certainly not required to be brought in Maryland state court. *See Touko v. United States,* Civ. No. GJH-20-1113, 2021 WL 2685328, at *3 n. 5 (D. Md. June 29, 2021) ("As the order issued by the Maryland Court of Appeals applied only to 'matters required to be filed in a Maryland state trial or appellate court,' it does not apply to Plaintiff's *Bivens* claims," which, like the federal claims at hand, borrow the state's statute of limitations). Given the Court's supplemental jurisdiction over Plaintiffs' state law claims (Counts III and IV) pursuant to 28 U.S.C. § 1367(a), those claims were likewise not "required to be filed" in a Maryland state court.

In sum, the claims brought by the November 5 Plaintiffs against TJL, Inc. in their Amended Complaint are untimely, and must be dismissed.

### B.  Failure to State a Claim

Beyond these threshold objections, Defendants argue that Plaintiffs have substantively failed to state claims under § 1981 and Title II against Defendants. These arguments fail. Thus, only the November 5 Plaintiffs' claims against TJL, Inc., which are untimely, must be dismissed.

### 1.  42 U.S.C. § 1981 Claims (Count I)

Plaintiffs have sufficiently alleged claims under § 1981, which provides that "[a]ll persons ... shall have the same right ... to make and enforce contracts ... as is enjoyed by white citizens."

---

alleged that they themselves were subjected to discrimination during the limitations period. *See, e.g., Muffoletto v. Towers,* 223 A.3d 1169, 1179, *cert. denied,* 229 A.3d 858 (2020) ("Maryland appellate courts have consistently held that the continuing harm doctrine rests on a new affirmative act."); *Litz v. Maryland Dep't of Env't,* 76 A.3d 1076, 1089 (2013) (explaining that "every repetition of the wrong creates further liability and creates a new cause of action, and a new statute of limitations begins to run after each wrong perpetuated") (citations and quotations omitted).

42 U.S.C. § 1981(a).  It defines "make and enforce contracts" to include "the making, performance, modification, and termination of contracts, and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship."  *Id.* § 1981(b).  Section 1981 is implicated where a restaurant fails to serve an individual on account of their race.  *See Gennell v. Denny's Corp.*, 378 F. Supp. 2d 551, 557 (D. Md. 2005).

To survive a motion to dismiss on a § 1981 claim, "a plaintiff must initially plead . . . that, but for race, it would not have suffered the loss of a legally protected right."  *Comcast Corp. v. Nat'l Ass'n of African Am.-Owned Media*, 140 S. Ct. 1009, 1019 (2020).  Plaintiffs are not required to "plead facts sufficient to establish a prima facie case of race-based discrimination to survive a motion to dismiss" but must meet the standard established in *Iqbal* and *Twombly.  Woods v. City of Greensboro*, 855 F.3d 639, 648 (4th Cir. 2017).[7]

Plaintiffs have sufficiently alleged that, but for their race, they would have been seated and served at the Diner.  Plaintiffs here have alleged that they were denied service expressly due to their race and religion when they were informed by the manager of the Diner that they were denied service because "a member or members of Plaintiffs' congregation—a congregation based on the Gypsy race and religion—had disrespected the Diner which caused the ban of all congregation members to be in effect" and because "they are Gypsies and they attend the God is Able ministries church."  (Am. Compl. ¶¶ 28, 38.)  This satisfactorily pleads a § 1981 claim at the motion to dismiss stage.  *See Denny v. Elizabeth Arden Salons, Inc.*, 456 F.3d 427, 435 (4th Cir. 2006)

---

[7]      Despite this, Plaintiffs and Defendants both analyze Plaintiffs' claims under the standard for a prima facie case under § 1981. (*See* Mot. Dismiss Mem. Supp. at 23–24; Opp'n to Mot. Dismiss at 10–11.)

(explaining that "it is hard to imagine plainer evidence of purposeful discrimination than when services are denied expressly" due to race).

Attempting to rebut this conclusion, Defendants argue that Plaintiffs will not be able to prove their factual allegations and that Plaintiffs' allegations contradict the administrative record. (Mot. Dismiss Mem. Supp. at 18–28.) In short, Defendants contend that Plaintiffs were banned from the Diner not due to their race or religion, but rather because Plaintiffs were disruptive patrons. (*Id.* at 8–9.)

Defendants' first argument mischaracterizes the Court's role in deciding a motion to dismiss, where, as explained above, the Court must "accept as true all well-pleaded allegations and view the complaint in the light most favorable to the plaintiff." *Venkatraman*, 417 F.3d at 420. Further, "[a] motion to dismiss under Rule 12(b)(6) tests the sufficiency of a complaint; importantly, it does not resolve contests surrounding the facts." *Republican Party of N.C. v. Martin*, 980 F.2d 943, 952 (4th Cir. 1992). Plaintiffs are not required to prove their allegations at this stage. *See Richards v. Berryhill*, 759 F. App'x 187, 189 (4th Cir. 2019) (explaining that, with respect to a motion to dismiss, the plaintiff's "allegation did not need to be proven, or even probably true; it only needed to be plausible on its face"). The factual dispute as to why Plaintiffs were not allowed to be seated and served in the Diner is therefore more properly considered at a later stage of litigation.

Defendants' second argument also fails. Defendants argue that the administrative record proves that Plaintiffs were not discriminated against. Defendants so argue because the MCCR Findings and the May 27 Letter (written by the human resources manager of Defendant TJL, Inc.) concluded that Plaintiffs were not allowed to eat in the Diner due to a non-discriminatory reason— because they had been disruptive. (Mot. Dismiss Mem. Supp. at 22.) This Court is unaware of—

14

and indeed Defendants fail to cite to—any authority that requires the Court to simply adopt the conclusions contained in the MCCR Findings or Defendants' administrative filings. Further, although Defendants argue that Plaintiffs' allegations also contradict those contained in Plaintiffs' MCCR charges, a comparison of those charges and the Amended Complaint does not show that they are necessarily inconsistent.

Taken together, Defendants' arguments to dismiss Plaintiffs' § 1981 claims essentially dispute the factual predicates alleged in the Complaint and are therefore premature at the motion to dismiss stage.

### 2.    *Title II Claims (Count II)*

Defendants also argue that Plaintiffs' Title II claims should be dismissed because Plaintiffs failed to satisfy Title II's notice requirement and failed to state a claim. Defendants further argue that Plaintiffs' request for injunctive relief is moot. For the reasons below, the Court will not dismiss Plaintiffs' Title II claims.

### i.    *Sufficiency of Notice*

Prior to initiating suit in this Court, Plaintiffs were required to provide notice to the MCCR of the alleged discrimination. As previously discussed, Title II contains a notice requirement. "[N]o civil action may be brought . . . before the expiration of thirty days after written notice of such alleged act or practice has been given to the appropriate State or local authority." 42 U.S.C. § 2000a-3(c). This notice requirement applies where the allegedly discriminatory act or practice occurred in a state "which has a State or local law prohibiting such act or practice and establishing or authorizing a State or local authority to grant or seek relief from such practice." *Id.*

Maryland law prohibits discrimination based on, *inter alia*, race and religion in places of public accommodations. Md. Code Ann., Human Relations § 20-304. It also provides a process

by which an aggrieved person can pursue relief through the MCCR. *Id.* § 20-1004. Plaintiffs were

therefore required to provide notice to the MCCR 30 days prior to filing suit. *See Stanford v.*

*Halloway*, Civ. No. DKC-16-1355, 2017 WL 1048257, at *2 (D. Md. Mar. 20, 2017) ("Maryland

law prohibits discrimination on the basis of race in public accommodations; therefore, Plaintiff

was required to provide notice to" the MCCR); *Hodge v. Cordish Cos. Inc.*, Civ. No. ELH-17-

0254, 2017 WL 3007069, at *6 (D. Md. July 14, 2017) (explaining that "[t]hese provisions obligate

an aggrieved person to provide notice to the [MCCR] prior to initiating suit.").[8]

Defendants, however, argue that Plaintiffs did not provide sufficient notice to the MCCR

because four Plaintiffs did not file individual MCCR charges against Defendants and because

Plaintiffs filed MCCR charges against "Koros, LLC d/b/a Double T Diner" and not against Koros,

Inc., Tie Mortos, Inc., or TJL, Inc. (Mot. Dismiss Mem. Supp. at 16–18.) However, a review of

the statutory text confirms that Plaintiffs provided sufficient notice for purposes of Title II.

Section 2000a-3(c)'s notice requirement is modest. It simply requires that the appropriate

state agency be given "written notice" of the "alleged act or practice" at least 30 days before filing

a federal action. 42 U.S.C. § 2000a-3(c). The statute does not require filing a state administrative

---

[8]     Although Plaintiffs concede that they were required to notify the MCCR prior to initiating this suit, Plaintiffs argue that § 20-1004(c)(1)(i), which provides the process for filing a complaint with the MCCR, does not apply to this case for two reasons. First, Plaintiffs argue that it does not apply to cases relating to discrimination in places of public accommodation. (Opp'n to Mot. Dismiss at 24–25). This is not true. As this Court has previously explained, in the context of a claim of discrimination in a place of public accommodation, "§ 20-1004 provides a process by which an aggrieved person can pursue relief through" the MCCR. *Hodge*, 2017 WL 3007069, at *6. The cases to which Plaintiffs cite indicate only that there is no private right of action for public accommodation discrimination cases (in contrast to employment or housing discrimination cases); they do not speak to whether § 20-1004 applies to public accommodation cases. *See Semenova v. Maryland Transit Admin.*, 845 F.3d 564, 568 (4th Cir. 2017); *Taylor v. Leggett*, Civ. No. PX-16-0115, 2017 WL 1001281, at *4 (D. Md. Mar. 15, 2017). Second, Plaintiffs argue that, § 20-1004(c) is inapplicable because their "claims are grounded entirely in 42 U.S.C. § 1981 and § 2000a." (Opp'n to Mot. Dismiss at 25.) This has no bearing on whether Plaintiffs' § 2000a claims are subject to the notice requirement by the plain language Title II.

charge against each potential defendant. *Id.* The statute also does not require written notice to the defendants, only to the appropriate state agency. *Id.*

Here, Plaintiffs provided the MCCR with written notice of the alleged act or practice. The eight MCCR Charges filed by Plaintiffs sufficiently detail the allegedly discriminatory acts on November 5, 2017 and January 28, 2018 and sufficiently allege a discriminatory practice. The MCCR Charges provide details similar to those contained in the Amended Complaint, including that Plaintiffs were denied service due to their "ethnic and religious background." (*See* Mot. Dismiss Mem. Supp., Ex. 2–9; Opp'n to Mot. Dismiss, Exhibits 1–7, 9.) Indeed, this notice was sufficient to allow the MCCR to conduct an investigation into the allegations.

Defendants correctly point out that four of the Plaintiffs failed to file individual charges with the MCCR. (Mot. Dismiss Mem. Supp. at 17–18.) However, these four Plaintiffs are either explicitly named or referenced in the MCCR Charges. (*See* Mot. Dismiss Mem. Supp. Exs. 2–9; Opp'n to Mot. Dismiss, Exs. 1–7, 9.) It is therefore difficult to see how receipt of four additional charges would further put the MCCR on notice of the allegedly discriminatory conduct or how the failure to file these additional charges failed to provide the MCCR with notice as required by Title II.

Similarly, although Plaintiffs did not name Koros, Inc., Tie Mortos, Inc., or TJL, Inc., the MCCR was on notice of the allegedly discriminatory conduct; namely, that the Diner—regardless of ownership—allegedly discriminated against two groups of Plaintiffs on two separate dates. This provided the MCCR with sufficient information to investigate the allegations. *See Hill v. Shell Oil Co.*, 78 F. Supp. 2d 764, 772 (N.D. Ill. 1999) (explaining that "§ 2000a–3(c) requires only written notice of the alleged discriminatory acts or practices. Plaintiffs do not need to file formal complaints with the [relevant state authority] naming each defendant as a respondent"); *see also*

Case 1:20-cv-03191-JKB   Document 29   Filed 09/14/21   Page 18 of 20

*Crumb v. McDonald's Corp.*, Civ. No. DKC-15-1719, 2016 WL 759213, at *8 (D. Md. Feb. 26, 2016), aff'd, 854 F. App'x 547 (4th Cir. 2021) (concluding that, although plaintiff only expressly noted a claim for discrimination based on personal appearance in her administrative charges, the narrative she provided put the state agency on notice of her racial discrimination claim). Therefore, Plaintiffs provided notice sufficient for purposes of § 2000a-3(c).

### ii. *Plausibility of Plaintiffs' Allegations*

Defendants also argue that, even if Plaintiffs provided adequate notice of their Title II claims, those claims should be dismissed because Plaintiffs' allegations are not plausible. (*See* Mot. Dismiss Mem. Supp. at 18–23.) Title II provides that "[a]ll persons shall be entitled to the full and equal enjoyment of the goods, services, facilities, privileges, advantages, and accommodations of any place of public accommodation . . . without discrimination or segregation on the ground of race, color, religion, or national origin." 42 U.S.C. § 2000a(a). Under Title II, "the plaintiff must establish that (1) the restaurant affects commerce; (2) the restaurant is a public accommodation; and (3) the restaurateur denied plaintiff full and equal enjoyment of the establishment" for a discriminatory reason. *Crumb*, 2016 WL 759213, at *9.[9]

Here, the Diner affects commerce and is a place of public accommodation. 42 U.S.C. § 2000a(b) (noting that an establishment is a place of public accommodation "if its operations affect commerce," including "any restaurant . . . or other facility principally engaged in selling food for consumption on the premises"). And, for the reasons discussed above, Plaintiffs have

---

[9]     Both Plaintiffs and Defendants cite to a different test, which requires that Plaintiffs show that similarly situated persons outside of his or her protected class received full benefits. The Fourth Circuit has expressly explained that this test is "an alternative analytical approach in public accommodation discrimination cases in which there is scant evidence as to how members of the protected class are treated differently from members outside the class." *Williams v. Staples, Inc.*, 372 F.3d 662, 668 n. 5 (4th Cir. 2004). This is not such a case.

plausibly alleged that the Diner denied them the full and equal enjoyment of the restaurant due to their race and/or religion.

### iii.   Injunctive Relief

The last hurdle for Plaintiffs' Title II claim is that Section 2000a-3 only authorizes suits for injunctive and declaratory relief and for attorneys' fees. *See Newman v. Piggie Park Enters.*, 390 U.S. 400, 402 (1968) ("When a plaintiff brings an action under [§ 2000a-3], he cannot recover damages."). Defendants argue that Plaintiffs cannot allege a claim for injunctive relief under Title II because the administrative record indicates that Plaintiffs and other Gypsies will not be denied service at the Diner and because Plaintiffs were expressly invited back to the Diner. (Mot. Dismiss Mem. Supp. at 25–29). As discussed above, Defendants cannot rely on the administrative record to disprove Plaintiffs' factual allegations at this stage. Further, a plaintiff may seek injunctive relief even a where defendant has taken steps to effectively moot the requested injunction. *See, e.g., Buchanan v. Consol. Stores Corp.*, 217 F.R.D. 178, 189 n. 14 (D. Md. 2003) (finding that defendant's institution of a new policy did not moot plaintiff's request for injunctive relief because defendant's "commitment to the new . . . policy is questionable, having instituted it just several months after the filing of this lawsuit"). Here, Plaintiffs allege that Defendants had a discriminatory policy and only attempted to withdraw this policy by offering Plaintiffs a gift card during the course of the MCCR investigation. Plaintiffs' requested injunctive relief is therefore not mooted by Defendants' suggestion that Plaintiffs' ban may no longer be in effect.

### C.   State Law Claims (Counts III and IV)

Defendants' briefing presumed that the Court would dismiss Plaintiffs' federal law claims (Counts I and II), and that, therefore, the Court would decline to exercise supplemental jurisdiction

over Plaintiffs' state law claims (Counts III and IV).  (Mot. Dismiss Mem. Supp. at 29.)  However, as discussed above, the Court has not dismissed Counts I and II in their entirety.

The Court's dismissal of the claims brought by the November 5 Plaintiffs against TJL does not affect its supplemental jurisdiction with respect to any of the state law claims.  The Court will therefore retain jurisdiction over those claims.  *See* 28 U.S.C. § 1367.

### IV.    Surreply

Plaintiffs have filed a Motion for Leave to File Surreply.  (ECF No. 28.)  Surreplies are generally disfavored and here would not alter the Court's analysis, as the proposed Surreply discusses the admissibility of evidence the Court did not consider.  *See Chubb & Son v. C & C Complete Servs., LLC*, 919 F. Supp. 2d 666, 679 (D. Md. 2013).

### V.    Conclusion

For the reasons set forth in the foregoing Memorandum, Defendants' Motion to Dismiss (ECF No. 16) will be GRANTED IN PART and DENIED IN PART and Plaintiffs' Motion for Leave to File a Surreply (ECF No. 28) will be DENIED.

DATED this *14* day of September, 2021.

BY THE COURT:

James K. Bredar
Chief Judge

20