**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND**

| | | |
|---|---|---|
| DARIN MCGILL, et al. | * | |
| Plaintiffs, | * | |
| v. | * | Civil No.: BPG-20-3191 |
| KOROS, LLC, et al. | * | |
| Defendants | * | |

\*     \*     \*     \*     \*     \*     \*     \*     \*     \*     \*

**MEMORANDUM OPINION**

Currently pending before the court is defendants' Motion for Summary Judgment (ECF No. 73) ("defendants' Motion"), plaintiffs' Response in Opposition to Defendants' Motion for Summary Judgment (ECF No. 77) ("plaintiffs' Opposition"), and defendants' Reply in Further Support of Their Motion for Summary Judgment (ECF No. 82) ("defendants' Reply). The issues are fully briefed, and no hearing is necessary. Loc. R. 105.6. For the reasons discussed herein, defendants' Motion for Summary Judgment (ECF No. 73) is granted.

## I.     BACKGROUND

In ruling on a motion for summary judgment, this court considers the facts and draws all reasonable inferences in the light most favorable to the non-moving party. Scott v. Harris, 550 U.S. 372, 378 (2007). Plaintiffs identify as Gypsies, (ECF No. 77 at 1-2), and are members of a Gypsy Christian church, the God is Able Ministries. (Id. at 2). Plaintiffs have been regular patrons of the Pasadena Double T Diner, where the challenged action occurred, for years, during which time plaintiffs have discussed their culture, language, and traditions with employees of the Diner. (Id. at 2-3). A large group of individuals, including plaintiffs, and many other members of the God is Able congregation, collectively referred to as the "Sunday Night Group," often went to the

Pasadena Double T Diner after church service to eat together.  (Id.)  It is undisputed that certain members of the Sunday Night Group engaged in disruptive, destructive, and disrespectful behavior in the Pasadena Double T Diner.  (Id. at 20-21).  Plaintiffs acknowledge that children often ran around unsupervised and some members of the group went behind the counter to retrieve their own items.  (Id.)  The employees of the Diner were unable to identify specific individuals responsible for the disruptive behavior.  (Id. at 23).  As a result of the disruptive behavior, Elias Korologos, the owner of the Pasadena Double T Diner, ordered diner management to refuse service to plaintiffs because certain members of the Sunday Night Group disrespected the Pasadena Double T Diner.  (Id. ECF No. 73-2 at 23).

On November 5, 2017, plaintiffs Darin McGill, Sally McGill, Nicholas McGill, Thomas Marks, Sylvia Bimbo, Bobby Petro, Priscilla Petro, Fernanda Wandemberg, and minor children N.M., H.M., and F.M.[1] (collectively, the "November 5 plaintiffs"), arrived at the Pasadena Double T Diner and asked to be seated.  (Id. at 3).  The manager on duty, Constantina Roros, informed the November 5 plaintiffs that they "were not allowed to be seated at the restaurant," because members of their group had "disrespected her and the restaurant."  (Id. at 3-4).  In denying service to the November 5 plaintiffs, plaintiffs claim that Ms. Roros used the phrases "you people" and "your kind of people" to refer to the group.  (Id.)  The November 5 plaintiffs believe that these comments were intended to refer to the fact that plaintiffs are Gypsies.  (Id.)  On January 28, 2018, the remaining plaintiff, Michael Demetro, entered the Pasadena Double T Diner with his family, and was similarly refused service.  (Id. at 5).  Ms. Roros informed Mr. Demetro that he and his family would not be served.  (Id.)  Like the November 5 plaintiffs, Mr. Demetro claims that Ms. Roros referred to him and his family as "yous" and "you people."  (Id.)  Again, Mr. Demetro believes

---

[1] On March 9, 2022, the court granted a Stipulation of Dismissal as to minor children H.M and F.M.  (ECF No. 57).

that these comments were intended to indicate that people of the Gypsy race were not permitted at the restaurant.  (Id.)

On November 4, 2020, plaintiffs filed a four-count Complaint in this court, alleging: (1) racial discrimination in violation of 42 U.S.C. § 1981; (2) racial and religious discrimination in violation of Title II, 42 U.S.C. § 2000a; and state law claims for (3) negligent hiring and retention; and (4) respondeat superior liability.  (ECF No. 1).  On February 12, 2021, defendants filed a motion to dismiss, which the court granted in part and denied in part on September 14, 2021.  (ECF No. 30).  The court held that the November 5 plaintiffs' claims against TJL, Inc. were untimely and dismissed those claims as to TJL, Inc.  (Id.)  Accordingly, as to the November 5 plaintiffs, only the claims against defendants Koros, LLC, Koros, Inc., and Tie Mortos, Inc. remain.  (Id.)  With regard to Mr. Demetro, all counts of the Complaint remain.  (ECF Nos. 30, 31).

## II.   DISCUSSION

Summary judgment is appropriate when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  A genuine dispute remains "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  A fact is properly considered "material" only if it might affect the outcome of the case under the governing law.  Id.  The party moving for summary judgment has the burden of demonstrating the absence of any genuine issue of material fact.  Fed. R. Civ. P. 56(a); Pulliam Inv. Co., Inc. v. Cameo Props., 810 F.2d 1282, 1286 (4th Cir. 1987).  On those issues for which the non-moving party will have the burden of proof, however, it is his or her responsibility to oppose the motion for summary judgment with affidavits or other admissible evidence specified in Federal Rule of Civil Procedure 56.  Fed.

R. Civ. P. 56(c); Mitchell v. Data Gen. Corp., 12 F.3d 1310, 1315-16 (4th Cir. 1993).  If a party fails to make a showing sufficient to establish the existence of an essential element on which that party will bear the burden of proof at trial, summary judgment is proper.  Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986).

When reviewing a motion for summary judgment, the court does not evaluate whether the evidence favors the moving or non-moving party, but considers whether a fair-minded jury could return a verdict for the non-moving party on the evidence presented.  Anderson, 477 U.S. at 252. In undertaking this inquiry, the court views all facts and makes all reasonable inferences in the light most favorable to the non-moving party.  Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).  The non-moving party, however, may not rest on its pleadings, but must show that specific, material facts exist to create a genuine, triable issue.  Celotex, 477 U.S. at 324.  A "scintilla" of evidence in favor of the non-moving party, however, is insufficient to prevent an award of summary judgment.  Anderson, 477 U.S. at 252.  Further, "mere speculation" by the non-moving party or the "building of one inference upon another" cannot create a genuine issue of material fact.  Cox v. Cnty. of Prince William, 249 F.3d 295, 299-300 (4th Cir. 2001).  Summary judgment should be denied only where a court concludes that a reasonable jury could find in favor of the non-moving party.  Anderson, 477 U.S. at 252.

Defendants move for summary judgment on all counts of plaintiffs' Complaint, stating that that plaintiffs fail to offer any direct or indirect evidence of racial discrimination in violation of 42 U.S.C. § 1981 or discrimination in a place of public accommodation in violation of Title II, 42 U.S.C. § 2000a.  (ECF No. 73-2 at 31)  Further, defendants argue that plaintiffs present no evidence to support their state law claims.  (Id. at 46).  Plaintiffs respond that Ms. Roros' statements to plaintiffs constitute direct evidence of racial discrimination, and that they can otherwise establish

a prima facie case of discrimination, entitling them to injunctive and declaratory relief pursuant to Title II. (ECF No. 77 at 15, 18). Plaintiffs offer no argument in response to defendants' contention that the state law claims are unsupported by evidence in the record. (Id. at 28).

**A. Defendants Koros, LLC, Koros, Inc., and Tie Mortos, Inc.**

Following the court's ruling on defendants' Motion to Dismiss, as to the November 5 plaintiffs, only those claims against Koros, LLC, Koros, Inc., and Tie Mortos, Inc. remain. (ECF Nos. 30, 31). As to plaintiff Michael Demetro, all Counts of the Complaint remain. Defendants assert that TJL, Inc. is the exclusive owner and operator of the Pasadena Double T Diner, such that summary judgment should be granted in favor of the remaining defendants, Koros, LLC, Koros, Inc., and Tie Mortos, Inc. (ECF No. 73-2 at 14-15). Plaintiffs offer no argument regarding which defendants own and operate the Diner. (ECF No. 77 at 28). Instead, plaintiffs appear to concede that TJL, Inc. is the sole owner and operator of the Pasadena Double T Diner, and note that the court still needs to evaluate plaintiff Michael Demetro's claims against TJL, Inc. (Id.)

The Pasadena Double T Diner is owned entirely and exclusively by TJL, Inc. (ECF No. 73-2 at 29). Elias Korologos is the majority owner of TJL, Inc. (Id.) No other company has a financial interest in TJL, Inc., and there are no subsidiaries, holding companies, or parent companies associated with TJL, Inc. (Id.) Koros, LLC, Koros, Inc., and Tie Mortos, Inc. do not own the Pasadena Double T Diner or TJL, Inc. (Id.) The principals of Koros, LLC and Koros, Inc. are Elias Korologos' brothers, John and Tommy Korologos, but neither John nor Tommy have any financial or ownership interest in either TJL, Inc. or the Pasadena Double T Diner. Neither Tommy nor John participates in the operation or management of the Pasadena Double T Diner. (Id. at 29-30). TJL, Inc. does not share employees with any of the other defendant companies, other than a human resources employee, who is paid separately by TJL, Inc. (Id.) Each company

maintains a separate payroll, does its own hiring, and only TJL, Inc.'s name appears on TJL, Inc.'s checks.  Thus, there are no facts in dispute that the Pasadena Double T Diner is wholly owned by TJL, Inc.  Because Defendants Koros, Inc., Koros, LLC, and Tie Mortos, Inc. are not involved in the operation or ownership of the Pasadena Double T Diner, the court grants summary judgment in favor of defendants Koros, Inc., Koros, LLC, and Tie Mortos, Inc., as to all counts of the Complaint and all remaining claims brought by the November 5 plaintiffs are resolved in favor of defendants.  The only claims that remain are Mr. Demetro's claims against TJL, Inc.  Accordingly, the remainder of this opinion refers to only those arguments relevant to Mr. Demetro and TJL, Inc.

### B. Plaintiff's § 1981 Claim

TJL, Inc. ("defendant") contends that Michael Demetro ("plaintiff") has failed to prove a prima facie case of racial discrimination.  (ECF No. 73-2 at 35-41).  Specifically, defendant argues that: (1) there is no direct evidence of discrimination; (2) plaintiff fails to establish a prima facie case of discrimination; and (3) defendant present a legitimate, non-discriminatory reason for the challenged action.  (Id.)  Plaintiff responds that Ms. Roros' statement, and the fact that plaintiff was denied service despite defendant's failure to identify who engaged in disrespectful behavior, establishes that he would not have been denied service but for his race.  (ECF No. 77 at 15-21).  Section 1981 "grants all persons within the jurisdiction of the United States 'the same right . . . to make and enforce contracts . . . as is enjoyed by white citizens.'"  Brown v. Harford Bank, No. ELH-21-96, 2022 WL 657564, at *8 (D. Md. Mar. 4, 2022) (quoting 42 U.S.C. § 1981).  In the context of restaurant service, "section 1981 has been read to protect against the discriminatory denial of 'the accouterments that are ordinarily provided with a restaurant meal[.]"  Gennell v. Denny's Corp., 378 F. Supp. 2d 551, 557 (D. Md. 2005) (quoting Callowood v. Dave & Buster's, Inc., 98 F. Supp. 2d 694, 702-03 (D. Md. 2000)).  In order to succeed on a § 1981 claim, plaintiff

must prove that "defendant intended to discriminate on the basis of race, and that the discrimination interfered with a contractual interest." <u>Brown</u>, 2022 WL 657564 at *8 (citation omitted).  Plaintiff must also prove "that, but for race, he would not have suffered the loss of a legally protected right." <u>Comcast Corp. v. Nat'l Ass'n of African American-Owned Media</u>, 140 S. Ct. 1009, 1019 (2020). A § 1981 claim may be proven by either direct evidence or the burden-shifting approach articulated in <u>McDonnell Douglas Corp. v. Green</u>, 411 U.S. 972 (1973).  Plaintiff contends that he can establish the elements of a racial discrimination claim through both direct evidence and the <u>McDonnell Douglas</u> burden-shifting framework.  (ECF No. 77 at 12, 18).

### i.       Direct Evidence of Racial Discrimination

Defendant moves for summary judgment on this issue, arguing that there is no direct evidence of racial discrimination, and that Ms. Roros' reference to plaintiff as "yous" and "you people" does not indicate an intention to discriminate against plaintiff.  (ECF No. 73-2 at 33-35). Plaintiff argues that Ms. Roros' statements taken in the proper context of defendant's conduct (<u>i.e.</u>, defendant's decision to deny plaintiff service) are direct evidence of racial discrimination.  (ECF No. 77 at 18).  When a plaintiff seeks to prove his case through direct evidence, he must do so by offering admissible evidence that: "(1) [he] is a member of a racial minority; (2) [ ] defendant intended to discriminate against [him] on the basis of race; and (3) the discrimination concerned a privilege protected under § 1981.  <u>Johnson v. Toys "R" US-Delaware, Inc.</u>, 95 Fed. App'x 1, 6 (4th Cir. 2004) (citation omitted).  Plaintiff may meet his burden "by the ordinary principles of proof using any direct or indirect evidence so long as the evidence is relevant to and sufficiently probative of the issue in question."  <u>Id.</u> (citing <u>Goldberg v. B. Green and Co.</u>, 836 F.2d 845, 847 (4th Cir. 1988).  Thus, to prove his case, plaintiff must produce evidence "of a stated purpose to discriminate and/or circumstantial evidence of sufficient probative force to reflect a genuine issue

of material fact." Id.  In the context of racial discrimination, "[d]irect evidence encompasses 'conduct or statements' that both (1) reflect directly the alleged discriminatory attitude, and (2) bear directly on the contested [discriminatory] decision." Liang v. Fed. Exp. Corp., 703 F.3d 713, 717 (4th Cir. 2013) (internal citation omitted).  The "conduct or statements," however, must not be "too speculative." Johnson, 95 Fed. App'x at 7 (citation omitted).  "Evidence is too speculative if the factfinder cannot rationally choose between mere 'possibilities' of meanings." Id.

Here, it is undisputed that plaintiff satisfies the first and third elements of a prima facie case of racial discrimination.  As to the first element, membership in a protected class, plaintiff, as a Gypsy, is a member of a protected class.  See Saint Francis College v. Al-Khazraji, 481 U.S. 604, 611 (1987) (recognizing that "gypsies" are a distinct race for purposes of § 1981 racial discrimination claims).  As to the third element, deprivation of the benefits and privileges protected under § 1981, plaintiff has presented sufficient evidence that, by refusing to serve plaintiff, defendant denied plaintiff the privileges of having entered into the restaurant to dine there.  See Williams v. Staples, Inc., 372 F.3d 662, 668-69 (4th Cir. 2004) (defendant's refusal of plaintiff's out-of-state check constituted denial of opportunity to contract for goods or services in violation of § 1981).

As to the second element, that defendant intended to discriminate against plaintiff on the basis of race, plaintiff contends that use of the phrase "you people," when viewed in the context of defendant's refusal of service to plaintiff, establishes an intent to discriminate against plaintiff because of his Gypsy race.   (ECF No. 77 at 20).  Defendant counters that use of the phrase "you people" is insufficient evidence upon which to conclude that the but-for cause of defendant's decision to deny service to plaintiff was his race.  (ECF No. 73-2 at 34).  This court has previously

examined whether use of the phrase "you people" constitutes direct evidence of racial discrimination. "[C]ourts have held that where the term 'you people' does not clearly and unambiguously refer to a minority group, it is not discriminatory." King v. Eastern Shore Water, LLC, No. SKG-11-1482, 2012 WL 3155647, at * 13 (D. Md. July 31, 2012) (citations omitted). Indeed, mere use of the phrase "you people" is insufficient to demonstrate discrimination. Linton v. Johns Hopkins Applied Physics Lab, LLC., No. JKB-10-276, 2011 WL 4549177 (D. Md. Sept. 28, 2011) (use of the phrase "you people" was insufficient to establish connection to plaintiff's race). Unlike comments that explicitly reference an individual's race, the court has interpreted use of the phrase "you people" to apply to a number of characteristics, not just membership in a protected group. Compare King, 2012 WL 3155647, at *13 (plaintiffs failed to prove that comments including, "you people are going to see how much harder things are going to get around here," and "you people is going to see how many of you is going to lose your jobs because of Obama" were "race-based in any way.") with Crumb v. McDonald's Corp., No. DKC-15-1719, 2017 WL 6055501, at *4 (D. Md. Dec. 6, 2017) (defendant's statement referring to plaintiff as a "big, fat, black hussy" constituted direct evidence of racial discrimination).

In this case, plaintiff offers Ms. Roros' use of the phrases "yous" and "you people" as direct evidence of racial discrimination. (ECF No. 77 at 20). Plaintiff contends that the court "must analyze both the conduct and the words of the offending party when determining whether direct evidence exists in a § 1981 discrimination claim." (ECF No. 77 at 19). To that end, plaintiff argues that even if Ms. Roros' statements alone are not direct evidence of a stated purpose to discriminate, in combination with the fact that plaintiff was denied service, the statement takes on added significance, and generates a genuine issue of material fact. (Id. at 19-20). Defendant contends that, rather than referring to plaintiff's race, the statement referred to plaintiff's

association with the Sunday Night Group. (ECF No. 73-2 at 36). As plaintiff acknowledged in his deposition, it is undisputed that at no time during plaintiff's interaction with Ms. Roros did she refer to plaintiff's race. (ECF No. 73-14 at 8). Plaintiff offers no evidence, other than his belief, that Ms. Roros intended the phrase "you people" to refer to plaintiff's race. (ECF No. 77 at 20). As noted in the cases discussed above, the mere use of this phrase is insufficient to demonstrate discrimination. Because plaintiff's evidence of racial discrimination is too speculative, leaving the court to guess at the intended meaning of the phrase, it does not constitute direct evidence of racial discrimination. Johnson, 95 Fed. App'x at 7. The court will not "impute a racial character to [defendant's statement and conduct] based simply on [plaintiff's] conjecture." Id. (quoting Hawkins v. PepsiCo, Inc., 203 F.3d 274, 281 (4th Cir. 2000)).[2] Because plaintiff has failed to offer direct evidence of discrimination, he must establish a prima facie case of discrimination using the McDonnell Douglas burden shifting scheme.

### ii.    Indirect Evidence of Racial Discrimination

Defendant maintains that plaintiff cannot establish a prima facie case of discrimination. Specifically, defendant argues that plaintiff has failed to offer adequate comparative evidence suggesting disparate treatment and, further, that a non-discriminatory reason exists for defendant's decision not to serve plaintiff. (ECF No. 73-2 at 37-38). Plaintiff responds that he can establish a prima facie case of race-based discrimination, based on the treatment of similarly situated patrons. (ECF No. 77 at 13). A plaintiff may establish a § 1981 claim by using the burden shifting

---

[2] Moreover, the court is persuaded by defendant's argument that Ms. Roros' statements cannot be direct evidence of racial discrimination because Mr. Korologos, the owner of the Pasadena Double T Diner, was responsible for making the decision to deny service to plaintiff. (ECF No. 73-2 at 35). Plaintiff does not offer any argument on this issue. The Fourth Circuit has held that direct evidence should reveal the discriminatory attitude of the decisionmaker responsible for the challenged action. Hill v. Lockheed Martin Logistics Mgmt., Inc., 354 F.3d 277, 290-291 (4th Cir. 2004) (en banc). For purposes of a discrimination claim, a "decisionmaker" is any employee "principally responsible" for the challenged decision. Id. While Ms. Roros was tasked with implementing the policy prohibiting service to members of the Sunday Night Group, there is no dispute that it was Mr. Korologos, not Ms. Roros, who made the decision to deny service to plaintiff, and he did not make the statement at issue.

framework articulated in <u>McDonnell Douglas</u>.  First, "plaintiff must make a prima facie case of intentional discrimination."  <u>McDonnell Douglas Corp. v. Green</u>, 411 U.S. at 802-03.  In the restaurant context, a plaintiff establishes a prima facie case of discrimination by showing that: (1) he is a member of a racial minority; (2) he has made himself available to receive and pay for services ordinarily provided by the defendant to all members of the public in the manner in which they are ordinarily provided; (3) he did not enjoy the privileges and benefits of the contracted for experience under factual circumstances which rationally support an inference of unlawful discrimination in that (a) he was deprived of services while similarly situated persons outside the protected class were not deprived of those services, and/or (b) he received services in a markedly hostile manner and in a manner which a reasonable person would find objectively unreasonable. <u>Gennell</u>, 378 F. Supp. 2d at 558 (citing <u>Callwood v. Dave & Buster's Inc.</u>, 98 F. Supp. 2d 694, 707 (D. Md. 2000)).

Second, if plaintiff establishes a prima facie case of discrimination, the burden shifts to defendant to "present a legitimate, nondiscriminatory reason for the adverse action alleged." <u>Id.</u> at 557 (internal citation omitted).  At this stage, defendant's burden is one of production, not persuasion. <u>Johnson</u>, 95 Fed. App'x at *8 (citing <u>Reeves v. Sanderson Plumbing Prods., Inc.</u>, 530 U.S. 133, 142 (2000)).  Third, if defendant is able to  "clearly set forth, through the introduction of admissible evidence, a legitimate, nondiscriminatory reason" for the contested action, plaintiff must sufficiently show that defendant's offered reason is pretext for discrimination. <u>Id.</u>  "Although the respective evidentiary burdens shift back and forth under the framework, the ultimate burden of persuading the trier of fact that [ ] defendant intentionally discriminated against [ ] plaintiff remains at all times with [ ] plaintiff." <u>Id.</u> (internal quotation and citation omitted).

With respect to a prima facie case of racial discrimination, plaintiff can establish both the first and second elements, membership in a protected class, and that plaintiff made himself available to receive the services provided by the Pasadena Double T Diner, respectively.  (ECF No. 77 at 1, 5).  As to the third element, plaintiff's primary contention is that he was deprived of services while similarly situated persons outside the protected class were not deprived of those services.  (Id. at 14).  Plaintiff summarily asserts that he has "established that similarly situated white and non-Gypsy customers at the Pasadena Double T Diner received more favorable treatment."  (Id.)  To rely on comparator evidence to establish a prima facie case of unlawful discrimination, a plaintiff must show "that the comparator is similarly situated in all relevant aspects."  Ryan v. McAleenan, No. ELH-19-1968, 2020 WL 1663172, at *18 (D. Md. Apr. 3, 2020).

To be "similar in all relevant aspects," a plaintiff must allege facts such as, he and the comparator "engaged in the same conduct without such differentiating or mitigating circumstances that would distinguish their conduct or [defendant's] treatment of them for it."  Id. (quoting Haywood v. Locke, 387 Fed. App'x 355, 359 (4th Cir. 2010)).  Plaintiff offers no specific comparator evidence, but rather contends that because there is no evidence that he was one of the individuals who actively engaged in disruptive or destructive behavior at the Diner, he is similarly situated to anyone "present at the [ ] restaurant on the same date and at the same time."  (ECF No. 77 at 14).  That is not the case.  It is undisputed that plaintiff was part of the Sunday Night Group. (ECF No. 73-14 at 5).  Thus, to be similarly situated, the comparator must be part of a group of individuals who engaged in disruptive behavior at the Diner.  Plaintiff has offered no such evidence.  As a result, plaintiff has failed to establish the third element of a prima facie case.

Even if plaintiff established a prima facie case of discrimination, defendant has articulated a legitimate, non-discriminatory reason for plaintiff's adverse treatment.  Defendant argues that the Sunday Night Group was prohibited from dining at the Pasadena Double T because of their behavior.  (ECF No. 73-2 at 38).  Defendant offers evidence demonstrating that the decision to deny service to certain members of the Sunday Night Group was made after repeated instances of destructive, disruptive, and disrespectful behavior.  (ECF No. 73-2 at 21).  Specifically, defendant cites one incident in which members of the Sunday Night Group destroyed a glass shelf when they went behind the counter to serve themselves.  (Id.)  Defendant further contends that "Pasadena Double T employees had trouble serving the Sunday Night Group because of the way many of the members acted."  (Id. at 38).  Plaintiff acknowledges that "some other Gypsies disrespected the restaurant and diner employees."  (ECF No. 77 at 15).  Because the Diner was unable to identify specific members of the Sunday Night Group responsible for the destructive and disrespectful behavior, the owner elected instead to deny service to all members.  (ECF No. 73-2 at 23).  Thus, defendant has established that its reason to deny service, supported by evidence in the record, had nothing to do with plaintiff's race.

Where, as here, a defendant "proffers a non-discriminatory reason for its actions, the presumption of discrimination ends and [ ] plaintiffs must show that the proffered reasons are false and that [ ] plaintiffs were the victims of intentional discrimination."  Jenkins v. Baltimore City Fire Dep't, 862 F. Supp. 2d 427, 454 (D. Md. 2012) (citing Reeves v. Sanderson Plumbing Products, Inc., 530 U.S. 133, 143 (2000).  It is not enough to present evidence that plaintiff found defendant's action unfair or hurtful.  Indeed, "[i]n determining pretext in discrimination cases, courts are not called on to decide whether the defendant's conduct toward the plaintiff is reasonable, wise, or even fair; instead, courts must decide whether there is sufficient evidence

showing that the proffered reason for the conduct is a dishonest one." <u>Johnson</u>, 95 Fed. App'x at 9. "Pretext is a lie or a cover up, not merely a mistake . . . . [E]rroneous[ ] or even purposeful[ ] misappli[cation] of . . . policy will not suffice to overcome summary judgment." <u>DAG Petroleum Suppliers, LLC v. BP P.L.C.</u>, 268 Fed. App'x 236, 242 (4th Cir. 2008). Here, plaintiff presents no evidence to suggest that defendant's stated purpose for refusing to serve him was pretextual. To the contrary, plaintiff acknowledges that many of the members of the Sunday Night Group, including members of his own family, with whom he regularly dined, engaged in the precise behavior which resulted in the owner's decision to deny him service. (ECF No. 77 at 6) ("Plaintiffs were prohibited from entering the Pasadena Double T Diner because some Gypsy or Gypsies who were part of their group had disrespected the restaurant.").

Even if plaintiff was not one of the individuals responsible for the disruptive behavior, defendant's erroneous application of the policy to plaintiff is not proof of unlawful discrimination. <u>See</u> <u>Dugan v. Albemarle Cnty. School Bd.</u>, 293 F.3d 716, 722 (4th Cir. 2002) ("Even if there is evidence that [defendant] erroneously or even purposely misapplied the [ ] policy, it is not proof of unlawful discrimination. [Plaintiff's] assertions of discrimination in and of themselves are simply insufficient to counter unrebutted evidence of legitimate, nondiscriminatory reasons for an adverse employment action."). Accordingly, plaintiff has failed to establish the elements of a race discrimination claim, and, therefore, the court grants defendants' Motion on this issue.

### C. <u>Plaintiff's Title II Claim</u>

Defendant moves for summary judgment on plaintiff's Title II claim, stating that plaintiff (1) has failed to show that defendant's refusal of service was the result of his race or religion; and (2) cannot demonstrate entitlement to injunctive relief. (ECF No. 73-2 at 42-45). Plaintiff responds that he was treated differently than other patrons due to his race and religion, and is

entitled to injunctive relief because defendant has not "in any way acknowledged that they have changed their discriminatory policies and practices."  (ECF No. 77 at 21-27).  Title II "creates a private cause of action to remedy discrimination in public accommodations affecting interstate commerce."  Callwood, 98 F. Supp. 2d at 708.  "Title II entitles individuals 'to the full and equal enjoyment of the goods, services, facilities, privileges, advantages, and accommodations of any place of public accommodation . . . without discrimination or segregation on the ground of race, color, religion, or national origin."  Denny, 456 F.3d at 431 (quoting 42 U.S.C. § 2000a(a)).  To prove a prima facie case of discrimination in the context of a restaurant, "plaintiff must establish that (1) the restaurant affects commerce; (2) the restaurant is a public accommodation; (3) the restaurateur denied plaintiff full and equal enjoyment of the establishment" for a discriminatory reason.  Callwood, 98 F. Supp. 2d at 709 (citing 42 U.S.C. § 2000a).

The first two elements, that the Pasadena Double T Diner affects commerce and is a place of public accommodation, are clearly established in this case.  A restaurant "affects commerce" and, thus, satisfies the first element of a Title II claim if "it serves or offers to serve interstate travelers or a substantial portion of the food which it serves . . . has moved in commerce."  Id. § 2000a(c).  In turn, a restaurant "is a place of public accommodation within the meaning of [42 U.S.C. § 2000a] if its operations affect commerce."  42 U.S.C. § 2000a(b).  "Commerce" includes "travel, trade, traffic, commerce, transportation, or communication among the several states."  Id. There is no dispute that the Pasadena Double T Diner affects interstate commerce, and the application of § 2000a to restaurants is well-settled.  See Newman v. Piggie Park Enters., Inc., 377 F.2d 433, 436 (4th Cir. 1967) ("Congress plainly meant to include within the coverage of the Act all restaurants, cafeterias, lunchrooms, lunch counters, soda fountains, and all other facilities

similarly engaged as a main part of their business in selling food ready for consumption on the premises").

As to the third element, whether the denial of full and equal enjoyment was predicated on discrimination based on race or religion, plaintiff contends that due to defendant's policy, he was denied full and equal enjoyment of access based on his race and religion.  (ECF No. 77 at 22).  For the reasons stated above, plaintiff fails to establish a prima facie case of racial discrimination.  Ms. Roros' statement does not constitute evidence of discrimination, and plaintiff points to no evidence, other than the fact that he was denied service, to support his belief that the denial was predicated on his racial identity.  (Id.)  In the absence of such evidence, plaintiff has failed to prove that he was denied full enjoyment of the Pasadena Double T Diner because of his race, and cannot establish a prima facie case of discrimination in violation of Title II.

With respect to plaintiff's claim of religious discrimination, defendant contends that plaintiff has offered no evidence to suggest that defendant was aware of plaintiff's religious affiliation.  (ECF No. 73-2 at 45).  Plaintiff responds that defendant was aware that plaintiff belongs to the same religious group as the rest of the Sunday Night Group, and that the Group was led by plaintiff's father, Pastor Nick Demetro.  (ECF No. 77 at 3, 23).  In order to prove a claim of religious discrimination in a place of public accommodation under Title II, plaintiff must show that defendant was both (1) aware of his religious beliefs, and (2) discriminated against him on the basis of those religious beliefs.  Wallace v. Cecil Cnty. Fair, Inc., No. GLR-19-1802, 2020 WL 5742746, at *3 (D. Md. Aug. 24, 2020) (citation omitted).  Here, plaintiff argues that defendant knew plaintiff attended God is Able ministries because defendant was told that plaintiff attended the church.  (ECF No. 77 at 23).  No other evidence supports plaintiff's claim that defendant was aware of plaintiff's religious beliefs.  Plaintiff cannot establish a prima facie case of discrimination

based on religious discrimination without identifying any evidence demonstrating that defendant was aware of his religious affiliation, and that his religion was the reason for the challenged decision.  See Sahagian v. Paulson, No. PJM 08-1314, 2009 WL 10727665, at *5 (D. Md. May 20, 2009) (concluding that plaintiff failed to establish a prima facie case for discrimination based on religion and national origin under Title VII, in part, because she "offer[ed] no evidence that [defendant] was even aware of her religion or national origin, much less that [defendant] acted discriminatorily on the basis of such knowledge").

Further, were plaintiff able to prove a violation of Title II, plaintiff is, nonetheless, not entitled to injunctive relief.  The only relief available under Title II is injunctive or declaratory relief, although attorneys' fees may also be awarded.  Gennell, 378 F. Supp. 2d at 556.  A plaintiff may seek injunctive relief even where a change of policy purports to eliminate the challenged action.  See e.g., Buchanan v. Consol. Stores Corp., 217 F.R.D. 178, 189 n.14 (D. Md. 2003) (a recent change in defendant's policy, implemented after initiation of the lawsuit, was insufficient to moot plaintiffs' request for injunctive relief).  "A request for injunctive relief is only mooted by the defendant's voluntary conduct if 'subsequent events made it absolutely clear that the allegedly wrongful behavior could not reasonably be expected recur.'"  Id. (citing Friends of the Earth, Inc. v. Laidlaw Env't. Servs., Inc., 528 U.S. 167, 189 (2000)).  In making this determination, the court considers whether plaintiff can show an intent to return to the premises.  Equal Rights Ctr. v. Abercrombie & Fitch Co., 767 F. Supp. 2d 510, 516 (D. Md. 2010).  Here, plaintiff has made it absolutely clear that, regardless of defendant's change in policy, defendant's offer of a $200 gift card, an invitation to return, and the fact that many other Gypsies and members of the God is Able congregation still frequent the Diner, plaintiff will "never go back there."  (ECF No. 73-14 at 14).  Upon consideration of plaintiff's own insistence that he will never return to the Diner, it is clear

that plaintiff has no intent to return, and, therefore, defendant's behavior could not reasonably be expected to recur.  For the foregoing reasons, the court grants defendant's Motion for Summary Judgment on plaintiff's Title II claim.[3]

### D. Plaintiff's State Law Claims

Defendant contends that plaintiff's state law claims fail because plaintiff has offered no evidence of tortious conduct on the part of defendant or its employees.  (ECF No. 73-2 at 46-47).  Plaintiff offers no argument in support of his state law claims, and "submit[s] on th[e] issue that [plaintiff] ha[s] not sustained any physical injury related to this accident."  (ECF No. 77 at 28).  For the reasons noted below, plaintiff's state law claims fail.

### i. Negligent Hiring and Supervision

Specifically, with regard to plaintiff's negligent hiring and supervision claim, defendant argues that plaintiff failed to submit any evidence of tortious conduct on the part of defendant's employees.  (ECF No. 73-2 at 46).  To prove a claim of negligent hiring and supervision, plaintiff "must establish that [his] injury was caused by the tortious conduct of an [employee], that the employer knew or should have known by the exercise of diligence and reasonable care that the [employee] was capable of inflicting harm of some type, that the employer failed to use proper care in selecting, supervising, or retaining that employee, and that the employer's breach of its duty was the proximate cause of plaintiff's injuries."  Bryant v. Better Bus. Bureau of Greater Maryland, Inc., 923 F. Supp. 720, 751 (D. Md. 1996).  In response, plaintiff submits "on this issue that [plaintiff] ha[s] not sustained any physical injury related to this incident."  (ECF No. 77 at 28).  This court has held that because "negligent selection, supervision, and retention claims are based

---

[3] As noted above, the court granted summary judgment on the November 5 plaintiffs' claims against defendants . Had those claims not already been resolved in favor of defendants Koros, Inc., Koros, LLC, and Tie Mortos, Inc., the November 5 plaintiffs' claims of discrimination in violation of § 1981 and Title II would fail for the same reasons detailed above regarding plaintiff Mr. Demetro's claims against defendant TJL, Inc.

on the common law[,]" and plaintiff's discrimination claim, which constitutes the tort that forms the basis of that claim, is based in federal law, "[s]uch claims [are] not actionable at common law in Maryland. <u>Id.</u> Accordingly, the court grants defendants' Motion on this claim.

### ii. Respondeat Superior

With regard to plaintiff's respondeat superior claim, defendant argues that plaintiff presents no evidence of tortious conduct and simply reiterates his discrimination claim. (ECF No. 73-2 at 46). To prove negligence under a theory of respondeat superior, plaintiff must show that (1) defendant's employee committed a tortious act against plaintiff, (2) defendant breached a duty to plaintiff, and (3) plaintiff suffered damages as a result. <u>Gennell</u>, 378 F. Supp. 2d at 560 (citation omitted). Although "[i]t is well-established that an employer may be liable under respondeat superior theory for its employees' violations of § 1981," plaintiff offers no argument or evidence to support such a claim. <u>Id.</u> Instead, plaintiff "submits on this claim." (ECF No. 77 at 28). Because plaintiff's § 1981 claim fails, there can be no respondeat superior liability. Accordingly, the court grants defendants' Motion on this claim.

### III. CONCLUSION

For the reasons set forth above, defendants' Motion for Summary Judgment (ECF No. 73) is GRANTED. A separate Order will follow.

Date: March 28, 2023

_/s/_____
Beth P. Gesner
Chief United States Magistrate Judge